6656

SANDERS v. BELUE.

1. SUPERINTENDENT OF COUNTY POOR HOUSE—QUO WARRANTO.—A PUBLIC OFFICER is one who is charged by law with duties involving an exercise of some part of the sovereign power, either small or great, in the performance of which the public is concerned, and which are continuing and not occasional or intermittent. A superintendent of a county poor house, appointed by a board of county commissioners, is a public officer. The remedy for the possession of such office is *quo warranto.*

2. IBID.—A COUNTY BOARD OF COMMISSIONERS cannot appoint a superintendent of the county poor house for a period longer than the time for which they hold. That the outgoing board had for a number of years appointed a superintendent for the next year, and that a new

board had no objection to the man so appointed by the old board, except that the majority had promised their friends in the campaign to remove him, do not affect it.

Before Aldrich, J., Union, March, 1907. Affirmed.

· Action by Joseph Sanders and W. Fowler Bobo, as County Commissioners of Union County, and S. G. Howell against J. Fincher Belue and T. J. Betenbaugh. From order refusing temporary injunction both parties appeal.

*Mr. J. A. Sawyer,* for plaintiff, cites: *What is a public office?* 23 Ency., 322, 324, 344, 347, 386, 391, 410; 2 Black. Com., 36; Con., art. III, sec. 26; Code 1902, 583, 785, 786, 792; 4 Rich., 146. *As to the effect of custom of old board:* 1 Black., 76; 1 Strob., 216; Dud., 163; 4 McC., 124: 1 Hill, 270; 44 S. C., 244; 1 McC., 96; 21 Hill, 539; 23 Ency., 366. *Temporary injunction should be granted when sole purpose of action is for injunction:* 69 S. C., 56; 54 S. C., 457; 51 S. C., 433; 67 S. C., 84; 62 S. C., 220; 22 Cyc., 740, 742; 8 Rich., 67. *Striking out irrelevant allegations:* 50 S. C., 54; 60 S.C., 390; Pom. Code Rem., sec. 551. *Allegation stating legal conclusion should not be stricken out for that reason alone:* 28 S. C., 388; 33 S. C., 216; 34 S. C., 67; 35 S. C., 309.

*Messrs. Townsend & Townsend,* for defendants, cite: *Defendant is an officer:* 19 Ency., 389, 380, 381, 384, 382-9, 669; Code 1902, 786; 2 Bail., 220; 86 N. C., 225; 1 McC., 52. *The authority to appoint a superintendent:* Code 1902, 785, 786; 11 S. C., 405; 16 S. C., 236; 130 Ind., 6; 4 Ency., 374; 4 Wood, 453; 17 S. C., 563. *Circuit Judge properly considered solvency of defendant:* 69 S. C., 156. *Allegations in injunction suits:* 10 Ency., T. & P., 923, 928, 931, 954, 955, 987, 989, 990; Ency. Ev., 310, note; 33 S. C., 217; 34 S. C., 66; 35 S. C., 307; 28 S. C., 390; 68 S. C., 98.

September 16, 1907. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The county board of commissioners of Union County, on January 7th, 1907, appointed the plaintiff S. G. Howell superintendent of the Poor House and Farm. The preceding county board of commissioners on October 15, 1906, had undertaken to appoint the defendant J. Fincher Belue superintendent for the term of one year from that date. Claiming the right to hold the position under this appointment until October 15th, 1907, the defendant Belue refused to surrender to Howell the property in his charge as superintendent. Thereupon, Howell and two of the county board of commissioners, Joseph Sanders and W. Fowler Bobo, brought this action to restrain the defendant Belue from interfering with Howell in taking possession of the property of the Poor House and Farm and discharging his duties as superintendent. Judge Aldrich refused the application for temporary injunction and plaintiffs appeal.

If the superintendent of the County Poor House and Farm is an officer, then it is conceded, the plaintiff Bobo has an adequate remedy at law by *quo warranto,* or under Chapter 2, title 13, of the Code of Civil Procedure, and there would be no ground to ask for equitable relief by injunction. The only statutory provisions bearing on the question, except the statutory definition of a public officer, are these sections of the Civil Code: Sec. 785. "The county board of commissioners shall have general supervision over the paupers and the Poor House and Farm of the County, and the said board shall provide all necessary buildings for the accommodation of the poor of the County, with sufficient tillable land to give employment to all paupers able to work, and said buildings and lands shall be designated as the Poor House and Farm of the County.

Sec. 786. "Said board shall be empowered to make all necessary rules and regulations for the government of the County Poor House and Farm, to appoint a superintendent, with such assistants as may be needed, to provide means for the employment as may be best suited to the inmates of

the Poor House, to see that every pauper able to work is employed, and to appoint one or more physicians to the Poor House, who shall furnish medical aid to the indigent sick."

Accepting any or all of the many definitions of public office which have been laid down by the jurists, it is still often difficult to say whether a particular position is an office or a mere employment. *U. S.* v. *Hartwell* 73 U. S., 385, 18 L. Ed., 830; *U. S.* v. *Germaine,* 99 U. S., 508, 25 L. Ed., 482; *Eliason* v. *Coleman,* 86 N. C., 235; *State* v. *Hocker* (Fla.), 63 Am. St., 181, note; *Opinion of Justice,* 3 Me., 81; 23 Am. & Enc., 322; *McCormick* v. *Pratt* (Utah), 17 L. R. A., 243, note. Laying aside for the moment the statutory definition of a public officer, we venture to think an examination of these and other authorities will lead to the approval of the following definitions as sufficiently expressing the generally accepted distinction between a public officer and an employee: One who is charged by law with duties involving an exercise of some part of the sovereign power, either small or great, in the performance of which the public is concerned, and which are continuing and not occasional or intermittent, is a public officer. Conversely, one who merely performs the duties required of him by persons employing him under an express contract or otherwise, though such persons be themselves public officers, and though the employment be in or about a public work or business, is a mere employee.

The position of superintendent of the Poor House and Farm is created by statute law and not by the county board of commissioners. The person to be appointed to the position is designated by statute, a superintendent, and that term itself connotes the assumption of responsibility and the exercise of discretion in the details of the management of the Poor House and Farm, though subject to the general supervision of the county board of commissioners. The care of the indigent is universally recognized as falling within the sovereign power of the State, and hence the superintendent in managing the details of the institution.

provided by the State for the indigent and helpless, exercises a part of the sovereign power.   The public is evidently concerned in the performance of these duties; and it is equally evident the duties are not intermittent or occasional but continuing throughout every moment, from appointment to removal or resignation.   The position, therefore, comes within all the terms of the generally accepted definitions of a public officer as distinguished from an employee.

The act 1901 (23 Stat., 754) contains this definition of a public officer:   "The term 'public officers' shall be construed to mean all officers of the State that have heretofore been commissioned, and trustees of the various colleges of the State, members of the various State Boards, Dispensary Constables, and other persons whose duties are defined by law."   The literal meaning of the words "other persons whose duties are defined by law" could hardly have been intended, for the duties of guardians, administrators and other trustees are defined by law, and yet it could scarcely have been the intention to include such persons in the definition of public officers.   The intention probably was to include in the definition all persons whose *public* duties are defined by law.   But taking the definition either in this sense or according to its literal meaning, it includes the superintendent of the Poor House Farm.

The thought will hardly be entertained for a moment that the defining of the duties necessary to make one a public officer necessarily means setting them out with such precision as to leave no room for the exercise of discretion in details of management.   If this were so, very few County officers would fall within the definition.

The Century Dictionary gives this meaning to the word "define" when used in connection with the duties of a public office:   "To fix, establish or prescribe authoritatively."   When the statute empowers the county board of commissioners to appoint a superintendent of the County Poor House or Farm, it is only a change of language and not of meaning to say it empowers them to appoint a person whose

duties shall be to superintend the Poor House and Farm, this is defining the public duties of a person so appointed; for to superintend means to have charge and direction of. The statute in placing upon the person appointed, the duties of superintending a public institution subject to the supervision of the county board of commissioners, defines his duties with about as much accuracy as the nature of the office will admit. The statutory definition of a public officer, as well as that which was generally accepted before the statute was passed, takes in the superintendent of the Poor House and Farm.

While it follows from this conclusion, the judgment must be affirmed, the remedy of the plaintiff being by *quo warranto,* or under Chapter 2, title 13 of the Code of Civil Procedure and not by injunction, yet the substantive question of the right of the two claimants to the office is of public interest and should be settled without putting the parties to the delay and expense of protracted litigation.

The Constitution, art. I, sec. 11, provides: "No person shall be elected or appointed to office in the State for life or during good behavior, but the terms of all officers shall be for some specific period, except notaries public and officers in the militia."

It will be observed this section does not require that the term of every officer shall be fixed by direct legislative enactment. The specified period may be inferred from the nature of the office and the duties of the officer. For example, when an inferior office is created the tenure may be implied to be the same as that of the superior office to which the inferior is an adjunct. Such an implication is especially strong when the inferior officer is charged with minor matters, the general supervision and responsibility devolving on the superior officer. The statute does not in terms fix any specified period during which an appointment to the office of superintendent of the Poor House and Farm continues. But the same is also true of the offices of deputy clerk and deputy sheriff, the appointments to which continue during the pleasure of the clerk or of the sheriff making the appoint-

ment. Yet it has never been doubted, so far as we are aware,
that the term of a deputy sheriff or deputy clerk ends by
operation of law with the term of the sheriff or clerk by
whom he was appointed. The clerk and sheriff being
charged with general responsibility for the conduct of their
respective offices, it is so plain that a deputy appointed by a
predecessor should not hold over, it was deemed unnecessary
to say that the term of the deputy should end with the term
of the clerk or sheriff who appointed him. So it is with the
office of superintendent of the Poor House and Farm. The
county board of commissioners are by law made responsible
for the general supervision of the Poor House and Farm of
the County, and it was never intended that the subordinate
officer appointed by them for the superintendence of the
institution should have a longer term than those by whom he
was appointed. The statutory scheme of general supervi-
sion by the board, and subordinate supervision by the super-
intendent, repels the idea of one board having the power to
impose a superintendent on a succeeding board. To sustain
the power which the retiring board attempted to exercise in
this case would lead to practical absurdity. If they could
fix the term of the office by appointment for one year
beyond their own term, they could fix it for ten years.

But it would not help the defendant Belue for the Court
to hold the tenure of his office not limited by legislative
intendment to the term of the board making the appointment.
For the absolute power of removal at pleasure is incident to
the power of appointment, unless the law provides duration
of the official term or mode of removal. *Ex parte Hennen,*
13 Peters, 259, 10 L. E., 138; 3 Rose's Notes, 824, and 1
Sup. Rose's Notes, 311; *Keim* v. *U. S.,* 177 U. S., 290, 44
L. Ed., 774; 23 Am. & Eng. Enc., 410. It is also well settled
that where the power to remove at pleasure exists, the ap-
pointment of another person operates as a removal of the in-
cumbent from the time he receives notice of the appointment.
*Ex parte Hennen, supra; Blake* v. *U. S.,* 103 U. S., 227. 26
L. Ed., 466; *Commonwealth* v. *Slifer* (Pa.), 64 Am. Dic.,

680. Sec. 27, art. III of the Constitution, does not make any different rule of law. It provides : "Officers shall be removed for incapacity, misconduct or neglect of duty, in such manner as may be provided by law, when no mode of trial or removal is provided in this Constitution." The requirement that officers shall be removed for incapacity, official misconduct or neglect of duty in such manner as may be provided by law, by no means implies abrogation of the general rule of law above stated, that an appointed officer may be removed at the pleasure of the officer who appointed him.

The affidavits tending to show that for some years the retiring county board of commissioners have been accustomed to elect a superintendent of the Poor House and Farm for a period extending beyond their own term cannot have the effect of changing the law. Nor can the Court take account of the charge that Belue, though recognized as an excellent officer, was turned out of office in fulfillment of campaign promises. However unworthy and unjust such action may be, the account for it must be rendered, not to the Court but to the people at the ballot box.

While the defendant Belue has no right whatever to the office of superintendent of the Poor House and Farm of Union County, the remedy of the plaintiff Howell is by *quo warranto* and not injunction.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.