THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Dale C. Pfeil, II, d/b/a DP Associates, Appellant,
v.
Steven Walker Homes
Corporation; Steven Walker
Homes, L.L.C.; Steven
Walker Communities, Inc.;
Steven Berzansky and David
Peery, d/b/a Steven Walker
Homes Corporation, Steven
Walker Homes L.L.C. and
Steven Walker Communities,
Inc.; Robert W. Palmer;
Rebecca W. Palmer; Kenneth C.
Nugent; Laurese A. Nugent;
Chase Manhattan Mortgage
Corporation; First Gaston Bank
of North Carolina; Pamela
Macaluso; Daniel L. Luithele;
Melissa D. Luithele; Wachovia
Bank; Fieldstone Mortgage
Corporation; Crown Homes,
Inc.; Joanne M. Anderson;
Wachovia Mortgage Corporation;
Cooperative Mortgage Services,
Inc.; First Union National Bank;
Brian C. Wilson; John E. Peterson;
Harper Peterson & Rogers, P.A.;
Harper, Peterson, Rogers & Reno,
P.A.; and Marvin Barman, Defendants. 
Of whom Steven Walker
Homes Corporation;
Steven Walker Homes, L.L.C.,
Steve Berzansky; David Peery;
Pamela Macaluso; Fieldstone
Mortgage Corporation;
Crown Homes, Inc.; Joanne M.
Anderson; Wachovia Mortgage
Corporation; Brian C. Wilson;
Harper Peterson Rogers &
Reno, P.A.; and Marvin Barman
are Respondents.        
 
 
 

Appeal from York County
S. Jackson Kimball, Master In Equity

Unpublished Opinion No. 2006-UP-359
Submitted September 1, 2006  Filed October 23, 2006

AFFIRMED

 
 
 
Mitchell K. Byrd, of Hilton Head, for Appellant.  
Brian S. McCoy, of Rock Hill, for Respondents Steven Walker Homes Corporation, Steven Walker Homes, L.L.C., Steven Berzansky, David Peery, and Marvin Barman.
Curtis W. Dowling and Andrea C. Pope, both of Columbia, for Respondent Harper, Peterson, Rogers & Reno, P.A.
John J. Hearn, of Columbia, for Respondent Joanne M. Anderson.
Lucy L. McDow, of Rock Hill, for Respondent Brian C. Wilson.
Louis H. Lang, of Columbia, for Respondents Pamela Macaluso, Crown Homes, Inc., and Fieldstone Mortgage Corporation.
Pearce W. Fleming, of Columbia, for Respondent Wachovia Mortgage Corporation.
 
 
 

PER CURIAM:  Dale C. Pfeil, II, doing business as DP Associates, appeals the grant of partial summary judgment to Steven Walker Homes, L.L.C. and its principals (collectively Walker[1]), and the grant of summary judgment to all other defendants.  We affirm.[2]
FACTS
Walker, a home builder, purchased property in Fort Mill, South Carolina, for development purposes and NationsBank financed the purchase.  This appeal focuses on two lots in the developed property:  Lot 33 in Wentworth Subdivision, and Lot 130 in Keswick Subdivision.  
Pfeil was a masonry subcontractor for Walker.  When Walker began experiencing serious financial difficulties, Pfeil served and filed mechanics liens on thirteen of the lots in the subdivisions on which he had performed work.  Pfeil then brought an action to foreclose his mechanics liens, and John Peterson, an attorney from Harper, Peterson, Richards & Reno, P.A. (the law firm) answered on Walkers behalf.  After accepting partial payments from Walker, Pfeil dropped his mechanics liens and sought the remaining monies owed to him through a debt collection action.  He eventually obtained a confession of judgment from Walker.  
In the interim, NationsBank brought an action to foreclose its mortgages, and named Pfeil as a defendant.  Pfeil defaulted.  
In an effort to maximize return for Walkers creditors, Marvin Barman, a workout specialist, was engaged to seek private buyers for several parcels instead of resorting to a public sale.  As a result, Lot 33, which had a partially built home, was bought by Pamela Macaluso, who completed the construction and sold the property to Daniel and Melissa Luithele.  Brian Wilson was the closing attorney on the sale.  Lot 130, undeveloped at the time, was purchased by Crown Homes, which resold it to Joanne Anderson, whose purchase was financed by Wachovia Mortgage.  Pfeil had yet to file his confession of judgment at the time of the transfers.  
In order to sell both Lot 33 and Lot 130, Walker had to obtain releases from certain creditors and use its own funds to pay closing costs.  Walker received no money from either closing, and all the proceeds were paid to NationsBank, the primary lienholder on the respective lots.  
Pfeil filed an action to enforce his judgment against Walker.  At the time, Walker had no assets, so Pfeil sought to pierce the corporate veil and obtain personal judgments against Berzansky and Peery.  Pfeil later amended his complaint to set aside the conveyance of Lot 33 and Lot 130 to the Luitheles and Anderson, claiming the conveyances were fraudulent and unlawful, or both.  In addition he alleged breach of trust by Walker and civil conspiracy, unfair trade practices, and intentional harm against Walker, Wilson, Barman, and the law firm.  
Wilson, Barman, and the law firm filed motions for summary judgment, which the circuit court granted.  Walker also moved for summary judgment, which the circuit court partially granted.  The circuit court denied Walker summary judgment on Pfeils claims to enforce the confession of judgment, for veil piercing, and for breach of trust.  
ISSUES

 
 
 I. 
 Did the circuit court err in granting summary judgment to all defendants on Pfeils fraudulent conveyance claim?
 
 
 
 
 II. 
 Did the circuit court err in granting summary judgment to all defendants on Pfeils unlawful assignment claim?
 
 
 
 
 III.
 Did the circuit court err in granting summary judgment to Walker, Wilson, Barman, and the law firm on Pfeils unfair trade practices, civil conspiracy, and intentional harm claims?
 
 

STANDARD OF REVIEW
An appellate court reviews the grant of summary judgment under the same standard applied by the circuit court.  David v. McLeod Regl Med. Ctr., 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006).  The circuit court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56(c), SCRCP; Underwood v. Coponen, 367 S.C. 214, 217, 625 S.E.2d 236, 237 (Ct. App. 2006).  In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party.  Law v. S.C. Dept of Corr., 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006).
LAW/ANALYSIS
I.       Fraudulent Conveyance
Pfeil argues the circuit court erred in granting summary judgment to all defendants on his fraudulent conveyance claim.  We disagree.
The Statute of Elizabeth, codified at section 27-23-10 of the South Carolina Code (Supp. 2005), renders void any transfer of property made with the intent or purpose to delay, hinder, or
defraud creditors and others.  Carr v. Guerard, 365 S.C. 151, 153-54, 616 S.E.2d 429, 430 (2005).  When a transfer is supported by valuable consideration, it may be set aside as a fraudulent conveyance only if an actual intent to defraud creditors may be imputable to the grantee.  Royal Z Lanes, Inc. v. Collins Holding Corp., 337 S.C. 592, 594, 524 S.E.2d 621, 622 (1999). 
A creditor seeking to void a transfer need not establish actual knowledge of, or participation in, the debtors fraudulent intention by the grantee.  See Coleman v. Daniel, 261 S.C. 198, 210, 199 S.E.2d 74, 80 (1973).  Rather, [t]he transaction is subject to attack if at the time of the transfer the transferee had notice of circumstances which would arouse the suspicion of an ordinarily prudent man and cause him to make inquiry as to the purpose for which the transfer was being made, which would disclose the fraudulent intent of the maker.  Id. at 210-11, 199 S.E.2d at 80.  
In this case, both transfers were supported by valuable consideration.  Accordingly, Pfeil must show Walkers alleged fraudulent is imputable to the grantees.  Pfeil essentially alleges Walker had fraudulent intent because it preferred NationsBank over Pfeil.  However, [a] mere knowledge that the effect of [a] preference would be to hinder or delay other creditors is not sufficient to taint the transaction, if there be no actual intent that the preference shall have such result.  McElwee v. Kennedy, 56 S.C. 154, 172, 34 S.E. 86, 92 (1899).  The transfers here provided no benefit to Walker save the cancellation of a preexisting debt to NationsBank.  Therefore, Pfeil has only shown an intent by Walker to pay NationsBank, the priority secured lender on Lot 33 and Lot 130.  Because Pfeil cannot show fraudulent intent by Walker, he cannot show a similar intent by grantees.
Additionally, NationBanks status as a secured creditor with respect to Lot 33 and Lot 130 thwarts Pfeils fraudulent conveyance theory.  In Owings v. Graham, 120 S.C. 408, 451, 113 S.E. 279, 293 (1922), our supreme court held that to be fraudulent, the subject-matter of [a conveyance] should be something out of which the creditor could otherwise have realized all or a portion of his claim.  
Pfeil does not argue his claim, unsecured at the time of these transfers, took priority over the claim of NationsBank or other secured creditors.  Even if Pfeil had been a lien creditor at the time of the transfers, he would not have had priority over NationsBank because NationsBank had a properly recorded mortgage on both Lot 33 and Lot 130.  See S.C. Code Ann. § 30-7-10 (Supp. 2005) (providing mortgagee with properly recorded mortgage on real property priority over lien creditors and other creditors).  Pfeil does not dispute NationsBank had first priority in any proceeds from the sale of both Lot 33 and Lot 130.  In this case, Pfeil produced no evidence that he would have received payment of his debt had Walker not transferred Lot 33 or Lot 130.  Accordingly, the circuit court properly granted summary judgment to all respondents on Pfeils fraudulent conveyance claim.[3]
II.      Unlawful Assignment
Pfeil contends the circuit court erred in granting summary judgment to all defendants on his unlawful assignment claim.  We disagree.
Section 27-25-10 of the South Carolina Code (Supp. 2005) provides, in pertinent part:

Any assignment by an insolvent debtor of his property for the benefit of his creditors in which any preference or priority is given to any creditor or creditors of the debtor by the terms of the assignment over any other creditor or creditors, other than as to any debts . . . in which any provision or disposition of the property so assigned is made or directed other than that it be distributed among all creditors of the insolvent debtor equally, in proportion to the amount of their several demands and without preference or priority of any kind whatsoever . . . shall be absolutely null and void and of no effect whatsoever.

(emphasis added).
We reiterate NationsBank filed a properly recorded mortgage on both Lot 33 and Lot 130.  See S.C. Code Ann. § 30-7-10 (Supp. 2005).  The proceeds from the transfers here benefited only NationsBank and other junior, secured creditors.  Pfeil does not dispute that these creditors had a right to any proceeds from these transfers over any unsecured creditors or lien creditors.  Thus, it does not meet the emphasized condition of 27-25-10 that without the transfer, Pfeil would have taken equally from the proceeds of this sale.  Accordingly, we hold the circuit court properly found Pfeil failed to show a violation of section 27-25-10.
III.    Other Causes of Action
Pfeil argues the circuit court erred in granting summary judgment to Wilson, Barman, the law firm, and Walker on his unfair trade practice, civil conspiracy, and intentional harm claims.  We disagree.
To recover pursuant to the Unfair Trade Practices Act, one must prove each of the following three elements by the greater weight or preponderance of the evidence:  1) a violation of the Act, 2) proximate cause, and 3) damages.  Charleston Lumber Co., Inc. v. Miller Housing Corp., 318 S.C. 471, 482, 458 S.E.2d 431, 438 (Ct. App. 1995).  In this case, Pfeil alleges Wilson, Barman, and the law firm misled grantees, neglected to inform grantees of Pfeils pending claim, and failed to adequately disclose conflicts of interest to grantees.  
A civil conspiracy is a combination of two or more parties joined for the purpose of injuring the plaintiff, thereby causing . . . special damages.  Angus v. Burroughs & Chapin Co., 368 S.C. 167, 170, 628 S.E.2d 261, 262 (2006).  In his appellate brief, Pfeil characterizes the civil conspiracy that Walker, Wilson, Barman, and the law firm engaged in a plan to sell [Walkers] property without paying creditors like Pfeil even if the claim was known to be pending on the public record.  
Based on Pfeils appellate brief, we interpret his claim of intentional harm to be a claim for intentional deprivation of a pecuniary or protected property interest.  A person who does any tortious act for the purpose of causing harm to another or to his things or to the pecuniary interests of another is liable to the other for such harm if it results.  Stewart v. Martin, 232 S.C. 483, 487, 102 S.E.2d 886, 888 (1958) (citation omitted).  
Even if the acts alleged here rose to the level of an unfair or deceptive trade practice, a civil conspiracy, or an intent to harm Pfeils pecuniary or protected property interest, Pfeil fails to produce evidence he was damaged.  For the reasons stated previously, Pfeil failed to show he could have recovered even if the transfers had not occurred.  Accordingly, we hold the circuit court properly granted summary judgment to Wilson, Barman, the law firm, and Walker with respect to Pfeils unfair trade practice, civil conspiracy, and intentional harm claims.
AFFIRMED.  
 HUFF and STILWELL, JJ., and CURETON, A.J., concur.

[1] The entity Steven Walker Homes Corporation and individuals Steven Berzansky and David Peery manage Steven Walker Homes, L.L.C.  
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.
[3]  Pfeil additionally argues the circuit court erred in finding Barman, Wilson, the law firm, and Berzansky did not aid or abet the alleged fraudulent conveyances.  Because we find Pfeil failed to show a fraudulent conveyance, we need not address this issue.